***********
In the Court of Appeals Opinion filed December 3, 2002, the Court stated, "The Commission must find the date on which the employee reached MMI with regard to the specified scheduled injury before awarding compensation from that date based on the statutory number of weeks set forth in N.C. Gen. Stat. § 97-31." The Court likewise indicated that "MMI" (or "maximum medical improvement") is the end of the healing period under N.C. Gen. Stat. § 97-31 and is the point at which the injury has stabilized. The Court vacated the Full Commission Opinion and Award of December 5, 2001 and remanded the matter for "further findings of fact regarding the date employee reached MMI."
With respect to the issue of MMI, the evidence in this matter clearly reflects that plaintiff had reached the end of her healing period from the injury by August 21, 1998. At that time, plaintiff was doing "wonderfully." (Chipman depo, p. 16) By that time, Dr. Chipman also felt that she was over the "acute phase" of her injury and had returned to her "baseline" or "premorbid" condition. (Chipman depo, pp. 25-26) Since plaintiff had returned to her pre-injury state by that time, it is clear that she also had reached the end of the "healing period" for the injury and was at MMI.
For this reason, the Full Commission Opinion and Award is hereby modified to include a finding of fact that plaintiff reached the end of her healing period by August 21, 1998 and that that was the date of "maximum medical improvement."
The Court of Appeals Opinion further states, "If an employee has a scheduled injury under N.C. Gen. Stat. § 97-31 and a loss of wage-earning capacity, the employee may elect to seek benefits under whichever section will provide the more favorable remedy." The Court goes on to say, "This election does not allow for an employee to recover from both methods simultaneously." For this reason, as of August 21, 1998, a determination should have been made as to which recovery, as between compensation for the 10% permanent partial disability rating and compensation for loss of wage-earning capacity, was the more favorable remedy. For a 10% rating to the back, plaintiff would have been entitled to receive 30 weeks of compensation. For wage loss, plaintiff was awarded compensation through May 13, 1999, which constitutes approximately 37 6/7 weeks compensation after the date of MMI. Accordingly, the continuing wage-loss compensation award under N.C. Gen. Stat. § 97-29 is the more favorable remedy available to plaintiff, and she shall be awarded that benefit "in lieu of" compensation for the permanent disability rating.
 ***********
The parties entered into the following stipulations:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between Wal-Mart Stores and the plaintiff at all relevant times herein.
3. The Insurance Company of the State of Pennsylvania was the workers' compensation carrier at all relevant times herein.
4. Plaintiff's average weekly wage will be determined from a Form 22 to be provided by defendants and the evidence in this matter.
5. The issues to be determined from this hearing are as follows:
 a) Whether plaintiff sustained an injury by accident while in the course and scope of her employment with Wal-Mart on May 4, 1998.
 b) If so, what, if any, benefits is she entitled to recover under the Workers' Compensation Act?
 c) Whether plaintiff is entitled to attorney's fees for the unreasonable defense of this matter.
 ***********
Based upon the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was forty-eight years old at the time of this hearing. She began working for Wal-Mart on December 16, 1995, as an area manager in Hope Mills, North Carolina.
2. Plaintiff's average weekly wage at the time of the incident was $900.95 per week.
3. On or about May 4, 1998, plaintiff was attempting to lift a broken dock plate on door 47, when she felt pain in her back, hip and leg. She reported the incident to her supervisor James Butler on May 5, 1998.
4. Prior to this incident, plaintiff had been seen and treated by Dr. Warren at Primary Care Plus on April 29, 1998. Plaintiff was seen and treated for ongoing depression and headaches. She did not complain of any back pain during this visit, nor had plaintiff had any problems with her back, hip and legs prior to this occasion.
5. Plaintiff was initially seen and treated for this incident on May 6, 1998 at Primary Care Plus. She had complaints of right hip and leg pain radiation to her feet. She was diagnosed with sciatica and was taken out of work. When plaintiff did not respond to her treatment she was referred to Dr. Martin Chipman, a neurologist.
6. Dr. Chipman diagnosed an acute L3-4 radiculopathy, disc bulging with some mild indentation of the spinal sac, both at L3-4 and L4-5, with possible irritation of the femoral nerve as it exits the inguinal ligament, affecting the sensory portions of the femoral nerve and the lateral femoral cutaneous nerve of the thigh. Dr. Chipman treated plaintiff with physical therapy, aqua therapy, sleeping on a hard bed, restricting her to carrying no heavy loads, and sitting in a high back chair.
7. Plaintiff was released to return to light duty on or about July 13, 1998, but defendants did not allow her to return to work. Plaintiff had restrictions of no lifting over 20 pounds without assistance, no lifting over 50 pounds with assistance, 10 minutes of sitting to rest her back each hour, no climbing ladders, and reduced hours initially.
8. Dr. Warren indicated on October 15, 1998, and the Full Commission finds as fact, that plaintiff was disabled and not able to perform her duties as a manager for at least one year or longer. Dr. Chipman gave plaintiff a 10 percent permanent partial disability to her back as a result of this incident. Plaintiff is in need and continues to receive medical treatment as a result of her injuries of May 4, 1998.
9. Plaintiff began working for another employer on May 13, 1999, at wages that were greater than or equal to the wages she was earning at the time of the incident.
10. With respect to the issue of MMI, the evidence in this matter clearly reflects that plaintiff had reached the end of her healing period from the injury by August 21, 1998. At that time, plaintiff was doing "wonderfully." (Chipman depo, p. 16) By that time, Dr. Chipman also felt that she was over the "acute phase" of her injury and had returned to her "baseline" or "premorbid" condition. (Chipman depo, pp. 25-26) Since plaintiff had returned to her pre-injury state by that time, it is clear that she also had reached the end of the "healing period" for the injury and was at MMI. Plaintiff reached the end of her healing period by August 21, 1998 and that was the date of "maximum medical improvement."
11. Defendants did not defend this action without reasonable cause.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident on May 4, 1998 while in the course and scope of employment with Wal-Mart. Plaintiff is entitled to receive workers' compensation benefits as a result of the injuries.
2. Plaintiff is entitled to receive disability benefits for the periods she was unable to earn wages as a result of the injuries she sustained.
3. Plaintiff is entitled to receive medical benefits for so long as they continue to effect a cure, give relief and/or lessen plaintiff's period of disability.
4. Plaintiff sustained a 10 percent permanent partial disability to the back and is entitled to make an election between the more munificent of continuing wage loss after MMI or the 10% permanent partial disability rating. Here, continuing wage loss is the more munificent remedy and plaintiff is deemed to have chosen that. For a 10% rating to the back, plaintiff would have been entitled to receive 30 weeks of compensation. For wage loss, plaintiff was awarded compensation through May 13, 1999, which constitutes approximately 37 6/7 weeks compensation after the date of MMI. Accordingly, the continuing wage-loss compensation award under N.C. Gen. Stat. § 97-29 is the more favorable remedy available to plaintiff, and she shall be awarded that benefit "in lieu of" compensation for the permanent disability rating.
5. Plaintiff is not entitled to attorney fees pursuant to N.C. Gen. Stat. § 97-88.1.
6. Defendants appealed this matter. By this Opinion and Award compensation is ordered paid to plaintiff. Under these circumstances the Full Commission may award reasonable attorney fees to plaintiff's counsel pursuant to N.C. Gen. Stat. § 97-88. However, since the appeal resulted from a mistake of the Full Commission, the Full Commission declines to award such fees.
 ***********
Considering the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay to plaintiff total disability benefits at the rate of $532.00 per week beginning May 6, 1998 and continuing through May 13, 1999. This amount has accrued and shall be paid in one lump sum, with interest at 8 per cent per annum from August 27, 1999 until paid. Defendants shall pay directly to plaintiff's counsel one-fourth of the lump sum prior to interest and shall pay the remainder of the lump sum and all of the interest to plaintiff.
2. Having made an election to receive the more munificent remedy, plaintiff foregoes permanent partial disability benefits at the rate of $532.00 per week for the 30 weeks following May 13, 1999 for the 10 percent permanent partial disability rating to her back and defendants shall not be required to pay any part of that.
3. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury when bills for same have been submitted, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
4. Defendants shall pay the costs of this action.
This 19th day of May 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER